# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>FIRST BRANDS GROUP, LLC *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-90399 (CML)<br>(Jointly Administered) |
| FIRST BRANDS GROUP, LLC *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ONSET FINANCIAL, INC. *et al.*,<br><br>Defendants. | Adv. Pro. No. 26-03005 (CML)<br>**ONSET FUNDING PARTNERS'<br>MOTION TO DISMISS** |
| ONSET FINANCIAL, INC.,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>BRAKE PARTS INC LLC; CARDONE INDUSTRIES, INC.; CARNABY CAPITAL HOLDINGS, LLC; CARNABY CAPITAL, LLC; CARNABY FA HOLDINGS, LLC; CARNABY FA, LLC; CARNABY INVENTORY IV, LLC; CARTER FUEL SYSTEMS, LLC; CHAMPION LABORATORIES, INC.; DALTON CORPORATION; EAGLE CASTING HOLDINGS, LLC; EAGLE CASTING, LLC; FIRST BRANDS GROUP HOLDINGS, LLC; FIRST BRANDS GROUP, LLC; FRAMAUTO HOLDINGS, LLC; FRAM GROUP OPERATIONS LLC; HOPKINS MANUFACTURING CORPORATION; HORIZON GLOBAL AMERICAS INC.; HORIZON GLOBAL COMPANY LLC; TOLEDO MOLDING & | |

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/firstbrands.  The Debtors' service address for these chapter 11 cases (the "Chapter 11 Cases") is 127 Public Square, Suite 5300, Cleveland, OH 44114.

DIE, LLC; TRICO PRODUCTS
CORPORATION; TRICO
TECHNOLOGIES CORPORATION;
VICEROY PRIVATE CAPITAL, LLC; and
WALBRO LLC,

       Counterclaim Defendants.

ONSET FINANCIAL, INC.,

       Cross-Claim Plaintiff,

v.

EDWARD JAMES,

       Cross-Claim Defendant.

ONSET FINANCIAL, INC.,

       Third-Party Plaintiff,

v.

AIRTEX PRODUCTS, S.A.; BRAKE
PARTS INC INDIA LLC; CARNABY
INVENTORY HOLDINGS IV, LLC;
DALTON CORPORATION, WARSAW
MANUFACTURING FACILITY; EAGLE
MACHINING, LLC; FIRST BRANDS
GROUP INTERMEDIATE, LLC; JASPER
RUBBER PRODUCTS, INC.;
STRONGARM, LLC; BPI BRAKE
MANUFACTURING JUÁREZ, S.A. DE
C.V.; BPI BRAKE SYSTEM (QINGDAO)
CO., LTD.; BRAKE PARTS INDIA
PRIVATE LIMITED; CARDONE DE
MÉXICO, S. DE R.L. DE C.V.; CEQUENT
ELECTRICAL PRODUCTS DE MÉXICO,
S. DE R.L. DE C.V.; FRAM GROUP
OPERATIONS MEXICALI, S.A. DE C.V.;
FRAM GROUP OPERATIONS MEXICO
CITY, S.A. DE C.V.; HOPKINS
MANUFACTURING DE MÉXICO S. DE
R.L. DE C.V.; LONGKOU HAIMENG
MACHINERY CO., LTD.; PETERSON
AMERICAN CORPORATION;
SUBENSAMBLES INTERNACIONALES,

S. DE R.L. DE C.V.; TALLERES
MECANICOS MONTSERRAT, S.A. DE
C.V.; TRICO BELGIUM; TRICO
COMPONENTES, S.A. DE C.V.; TRICO
ITALY S.R.L.; TRICO WIPERS PLOIESTI
S.R.L.; TRIDONEX, S. DE R.L. DE C.V.;
ULTINON MOTION GERMANY GMBH
(F/K/A LUMILEDS GERMANY GMBH);
WALBRO LOS MOCHIS, S. DE R.L. DE
C.V.; WESTFALIA-AUTOMOTIVE
GMBH; WITTER BRASOV
S.R.L.;WILMINGTON SAVINGS FUND
SOCIETY, FSB; BANK OF AMERICA,
N.A.; SAGARD HOLDINGS MANAGER
(US) LLC; GLAS USA LLC; JEFFERIES
FINANCE LLC;[2] AEQUUM CAPITAL
FINANCIAL II LLC; EVOLUTION
CREDIT OPPORTUNITY MASTER FUND
II-B, L.P.; GLAS TRUST COMPANY LLC;
UMB BANK, N.A.; PATRICK JAMES
TRUST; ALBION REALTY, LLC;
ALESTER TECHNOLOGIES LLC;
BATTERY PARK HOLDINGS LLC;
LARCHMONT, LLC; PEGASUS
AVIATION, LLC; BOWERY FINANCE II,
LLC; PATRICK JAMES; MICHAEL
BAKER; PETER ANDREW BRUMBERGS;
STEPHEN GRAHAM; SHEKHAR
KUMAR; ABC CORPORATION(S) 1–100;
and JOHN AND JANE DOE(S) 1–100,

       Third-Party Defendants.

---

[2] Movants have been informed that Jefferies Finance LLC is no longer serving in the capacity in which it was named as a defendant in Onset's Third-Party Claims.  The parties are in discussions with Jefferies Finance LLC regarding a stipulation of voluntary dismissal.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE .............................................................................................. 4

BACKGROUND ................................................................................................................... 4

LEGAL STANDARD............................................................................................................ 8

ARGUMENT ....................................................................................................................... 9

I.     THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT MOVANTS
ARE SUBSEQUENT TRANSFEREES AGAINST WHICH THE DEBTORS
MAY RECOVER *(COUNT III)*. ................................................................................ 10

II.    PLAINTIFFS FAIL TO STATE CLAIMS FOR AVOIDANCE OF THE
UNDERLYING TRANSFERS TO ONSET *(COUNTS I, II, XIX)*. ............................... 13

    A.    Plaintiffs Do Not Allege Fraud with the Specificity Rule 9(b) Requires. ........... 14

    B.    Even Under Rule 8's Notice Pleading Standards, the Complaint Does Not
Adequately Allege Fraudulent Transfer or Preference Claims........................... 19

        1.    The Complaint Does Not Allege Insolvency or Lack of Reasonably
Equivalent Value on a Debtor-by-Debtor or Transfer-by-Transfer
Basis................................................................................................. 20

        2.    Plaintiffs Fail to Allege Necessary Elements of a Preference. ................ 23

            a.    Which Transfer by Which Debtor is Unclear ............................. 23

            b.    Failure to Identify Antecedent Debts........................................... 24

            c.    Failure to Allege Insolvency...................................................... 25

            d.    Recovery Under Chapter 7 Is Not Alleged.................................. 25

        3.    Plaintiffs Fail to Plead Condition Precedent under Section 547(b). ......... 26

    C.    Plaintiffs Cannot Avoid and Recover Transfers Beyond the Applicable
Lookback Periods............................................................................................. 26

CONCLUSION................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admr., State Medicaid Est. Recovery Program v. Miracle*,
  31 N.E.3d 658 (Ohio Ct. App. 2015) ..............................................26, 27

*In re All Texas Elec. Contractors Inc. v. NSPS Metals LLC*,
  2022 WL 162786 (Bankr. S.D. Tex. Jan. 18, 2022) ......................................*passim*

*Anderson v. Wells Fargo Bank, N.A.*,
  953 F.3d 311, 314 (5th Cir. 2020) ..............................................11

*In re Arete Healthcare LLC*,
  No. 19-52578-CAG, 2022 WL 362924 (Bankr. W.D. Tex. Feb. 7, 2022) .......................23, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................8, 12, 21

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
  976 F.3d 585 (5th Cir. 2020) ..............................................10, 11

*In re Brown Med. Ctr., Inc.*,
  552 B.R. 165 (S.D. Tex. 2016) ..............................................13, 26

*Burnett Specialists v. Cowen*,
  140 F.4th 686 (5th Cir. 2025) ..............................................8

*In re Caremerica, Inc.*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009) ..............................................13

*In re Chapman*,
  628 B.R. 512 (Bankr. S.D. Tex. 2021) ..............................................22, 25

*In re Christmas Tree Shops, LLC*,
  No. 23-10575 (TMH), 2025 WL 3510820 (Bankr. D. Del. Dec. 5, 2025) .......................26

*Matter of Emerald Oil Co.*,
  695 F.2d 833 (5th Cir. 1983) ..............................................25

*Matter of Fabricators, Inc.*,
  926 F.2d 1458 (5th Cir. 1991) ..............................................28

*In re Essential Financial Educ., Inc.*,
  629 B.R. 401 (Bankr. N.D. Tex. 2021) ..............................................28

*United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*,
    157 F.4th 758 (5th Cir. 2025) ...................................................................................18

*In re Great Gulfcan Energy Texas, Inc.*,
    488 B.R. 898 (Bankr. S.D. Tex. 2013) ....................................................................11

*Guiliano v. Haskett (In re MCG, L.P.)*,
    545 B.R. 74 (Bankr. D. Del. 2016) ..........................................................................10

*Jackson v. City of Hearne, Texas*,
    959 F.3d 194 (5th Cir. 2020) .....................................................................................8

*In re J & M Sales Inc.*,
    No. 18-11801 (JTD), 2021 WL 12360932 (Bankr. D. Del. Aug. 20, 2021) ......26, 27

*Matter of Life Partners Holdings, Inc.*,
    926 F.3d 103 (5th Cir. 2019) ...................................................................19, 23, 25

*Matter of Louisiana Pellets, Inc.*,
    838 F. App'x 45 (5th Cir. 2020) ...............................................................................20

*Meyers v. Textron, Inc.*,
    540 F. App'x 408 (5th Cir. 2013) ...............................................................................8

*Matter of Missionary Baptist Found. of Am., Inc.*,
    712 F.2d 206 (5th Cir. 1983) ...................................................................................28

*In re Neighbors Legacy Holdings, Inc.*,
    645 B.R. 864 (Bankr. S.D. Tex. 2022) ............................................................ *passim*

*In re Northstar Offshore Grp., LLC*,
    616 B.R. 695 (Bankr. S.D. Tex. 2020) ...............................................................12, 28

*In re Oakwood Homes Corp.*,
    325 B.R. 696 (Bankr. D. Del. 2005) .........................................................................13

*In re Pinktoe Tarantula Ltd.*,
    No. 18-10344 (LSS), 2023 WL 2960894 (Bankr. D. Del. Apr. 14, 2023) ...............26

*In re Plassein Int'l Corp.*,
    405 B.R. 402 (Bankr. D. Del. 2009) .........................................................................20

*In re Quantum Foods, LLC*,
    558 B.R. 111 (Bankr. D. Del. 2016) .........................................................................10

*In re Reagor-Dykes Motor, LP*,
    No. 18-50214-RLJ-11, 2020 WL 4939180 (Bankr. N.D. Tex. Aug. 24, 2020) .........10, 14, 24

*In re Roberts*,
No. 25-01299, 2025 WL 3496228 (Bankr. D. Del. Dec. 4, 2025)...........................................8

*In re Shipley Garcia Enters. LLC*,
No. 11-20016, 2014 WL 1329252 (Bankr. S.D. Tex. Mar. 28, 2014)......................................8

*In re Trailhead Eng'g LLC*,
No. 18-32414, 2020 WL 7501938 (Bankr. S.D. Tex. Dec. 21, 2020)...................................25

*Van-Am. Ins. Co. v. Schiappa*,
191 F.R.D. 537 (S.D. Ohio 2000).........................................................................................13

*In re With Purpose, Inc.*,
No. 23-30246-MVL7, 2025 WL 1698694 (Bankr. N.D. Tex. June 16, 2025).................27, 28

*State ex rel. Woodridge Loc. Schs. v. Facebook, Inc.*,
432 F. Supp. 3d 729 (N.D. Ohio 2020)............................................................................14, 19

*In re Youngstown Osteopathic Hosp. Ass'n*,
280 B.R. 400 (Bankr. N.D. Ohio 2002)................................................................................20

**Statutes**

11 U.S.C. §§ 101(31).................................................................................................................28

11 U.S.C. § 544..........................................................................................................................27

11 U.S.C. § 547.................................................................................................................. *passim*

11 U.S.C. § 548.........................................................................................................21, 22, 24, 26

11 U.S.C. § 550(a)............................................................................................................. *passim*

Del. Code § 1309(2)...................................................................................................................26

Ohio Rev. Code Ann. § 1336.09................................................................................................26

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rule 7012....................................................................1

Federal Rules of Civil Procedure Rule 8 ..................................................................................13

Federal Rules of Civil Procedure Rule 9 ............................................................................13, 26

Federal Rules of Civil Procedure Rule 12 ..............................................................................1, 7

Justin Nielsen, Nielsen Investments, Jonathan Gardner, Scott Miller, Dale Holt, Todd Pedersen, Asilia Credit Investments, LLC, Joshua Tree Holdings, LLC, JA Gardner Holdings, Holt Investments 201 LLC, Seddie LLC, Yuma III, and Coral Dunes, LLC (collectively, "<u>Movants</u>")[3] respectfully file, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>" or "<u>Rules</u>"),[4] this motion to dismiss (the "<u>Motion</u>") the complaint in this action, dated January 9, 2026 [Docket No. 1] (the "<u>Complaint</u>"),[5] filed by Debtors and their non-Debtor affiliates (collectively, "Plaintiffs" or "First Brands"), subject to Movants' reservations of rights as to entry of final orders by the Court.  In support thereof, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.        Before First Brands filed its petition initiating these Chapter 11 cases and its business came crashing down in September 2025, it successfully deceived the automotive industry and Wall Street for years by masquerading as a stable, growing global auto parts empire.  Having now been revealed in the federal indictment filed in January as a massive criminal fraud scheme led by First Brands' now displaced CEO, Patrick James, and his brother and First Brands Executive Vice President, Edward James,[6] Plaintiffs desperately seek in their Complaint to shift blame away from First Brands and instead onto its largest victim, Onset Financial, Inc. ("<u>Onset</u>"), and Onset's funding partners (the Movants herein).  Together, Onset and Movants were swindled out of more than $2 billion by Patrick, Ed, and their co-conspirators, who targeted, deceived, and stole from Onset and Movants over and again.

---

[3]    Movants consist of Onset's funding partners but do <u>not</u> include Defendant Edward James or any of his affiliated investment vehicles.  Also, Debtors appear to have named in error Movant Asilia Credit Investments, LLC, which did not contract or do business, or invest either directly or indirectly, with Debtors or their affiliates.

[4]    Rule 12(b) is made applicable to this adversary proceeding (the "<u>Adversary Proceeding</u>") pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

[5]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Complaint.

[6]    Hereinafter "Patrick" and "Ed," respectively.

2.      Lacking the specificity required under the Federal Rules, the Complaint alleges in speculative and conclusory fashion that, incredibly, it was *Onset* that somehow masterminded a scheme to fleece the Debtors, their other creditors, and even Onset's own funding partners out of billions.  Yet, the Complaint's allegations on their face render this theory virtually impossible.

3.      To start, Plaintiffs accuse Onset of having colluded with Ed to defraud the Debtors, but their Complaint alleges that Ed did not become an Onset funding source until 2022, which was more than *four years after* Onset had become a consistent and reliable source of funding for First Brands.  At the same time, the Complaint suggests that the Debtors were already insolvent when Onset first transacted with First Brands (or rendered insolvent thereby), meaning that the Debtors' malfeasance *predated* Onset's involvement with First Brands.  It defies logic and common sense that Onset would have knowingly and intentionally stepped into an insolvent fraud and willingly placed billions of its own and its funding partners' dollars at risk—and that it would have done so for several years—all before engaging in the purportedly collusive conduct with Ed that the Debtors claim is evidence of Movants' fraudulent intent.  The fallacy of the Debtors' allegations applies with even greater force for Movants—Onset's funding partners—who appear to have been added as defendants as an afterthought.  With only a handful of vague allegations thrown in near the end of the Complaint, Debtors accuse Movants in conclusory fashion of having "acted in bad faith" or with "knowledge" of a fraud.

4.      Curiously, the Debtors must presume that the Court will ignore or be unaware of the Debtors' other recent filings in this proceeding, where they have repeatedly pointed the finger at Patrick and other First Brands executives for orchestrating the alleged fraud, which has since been loudly echoed by the recent federal criminal indictment of Patrick and Ed.[7]  Similar to the

---

[7]     *United States v. Patrick James and Edward James*, No. 26-cr-00029 (AT) (S.D.N.Y. Jan. 27, 2026) [hereinafter *U.S. v. James*], [Docket No. 2] (the "James Brothers Indictment"), attached to the Onset Answer as Exhibit 1.

allegations in the James Brothers Indictment, the Debtors have alleged that Patrick and other insiders (which certainly includes Ed) oversaw the creation of an entirely false set of books that deceived the Debtors' auditors, creditors, ratings agencies, the automobile industry writ large, and virtually all of Wall Street.  Indeed, the James Brothers Indictment alleges that the James brothers "made false and misleading representations" to lenders like Onset to "fraudulently induce them to extend and expand financing" to the Debtors.  Like scores of sophisticated lenders, investors, and other industry and market participants, Onset (and its Movant-funding partners) were deceived by "falsified inventory schedules," fake "account documentation," and collateral that, if it even existed, was often double- or triple-pledged to different lenders without knowledge or consent.

5.     Based on the facts alleged previously by the Debtors against Patrick and his cohorts,[8] now buttressed and bolstered by the allegations in the James Brothers Indictment, the appropriate course of action would be for the Debtors to withdraw their claims against Movants. But inexplicably they have not, choosing instead to persist in blaming the victims in a Complaint heavy on factually unsupported innuendo yet woefully light on factually supported substance. They do this in a bankruptcy running on fumes, in what is obviously a last-ditch money-grab for avoidance and recovery from Onset of billions of dollars of vaguely identified transfers, which Plaintiffs claim as either fraudulent or preferential under the Bankruptcy Code and other applicable law.  Plaintiffs seek similar recovery from Movants—as Onset's funding partners—apparently on account of certain of those transfers (which ones, precisely, they cannot and do not say) as

---

[8]     The Debtors' former Chief Financial Officer Steven Graham and former Vice President of Finance Peter Andrew ("Andy") Brumbergs have both pleaded guilty to multiple felony counts arising from their participation in the James brothers' fraud scheme.  *See* Minute Entry, *United States v. Peter Andrew Brumbergs*, No. 26-cr-00025-AT-1 (S.D.N.Y. Jan. 29, 2026); Minute Entry, *United States v. Steven Graham*, No. 26-cr-00025-AT-2 (S.D.N.Y. Mar. 2, 2026).

subsequent transferees, but Plaintiffs' flawed pleading cannot plausibly allege a claim against Movants.

6.      Plaintiffs also fail to engage with facts apparent from the face of the Complaint— and numerous other filed and public documents—that demonstrate Movants to be good faith transferees for value, providing Movants with a complete defense to recovery under Bankruptcy Code section 550(b).  The Complaint must be dismissed as to Movants for those reasons alone.

7.      More fundamentally, the Complaint improperly seeks to put the recovery "cart" before the avoidance "horse."  Unless and until Plaintiffs can avoid the underlying transfers to Onset as fraudulent or preferential, there can be no recovery against Movants.  And for the reasons set forth below and in detail in Onset's contemporaneously filed motion for judgment on the pleadings (the "Onset Motion"), Plaintiffs' avoidance claims all fail as a matter of law.

8.      Because the Complaint does not state claims for which relief may be granted, this Adversary Proceeding should be dismissed as to Movants.

## JURISDICTION AND VENUE

9.      Movants do not consent to entry of final orders or judgments by this Court in connection with this Adversary Proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

## BACKGROUND

10.      Movant Justin Nielsen is the founder and CEO of Onset, a leader in the equipment leasing and financing industry.  (Compl., ¶¶ 27, 32.)  Since 2022, he has provided funding, both individually and through his single-member (and Movant) limited liability company Nielsen Investments, as funding partners alongside Onset in several of Onset's equipment and inventory financing transactions with the Debtors.  (*Id.* ¶¶ 140–44.)

4

11.     The remaining Movants are other funding partners of Onset that participated alongside Onset in funding transactions with the Debtors.

12.     The Debtors do not allege in the Complaint that any of the Movants ever contracted directly with the Debtors; instead, they allege only that they provided funds and received related proceeds through Onset as an intermediary agent.

13.     Beginning in 2018, Onset has provided the Debtors with significant liquidity.[9] Since then, Onset and certain of the Debtors entered into a series of transactions that included both (a) direct leases of automotive manufacturing furniture, fixtures, equipment, inventory, and other assets purchased by Onset (the "Trico Transactions"); and (b) sale-leaseback transactions structured using the "Carnaby Debtors"—*i.e.*, Carnaby Inventory IV, LLC and Carnaby FA LLC, two special purpose vehicles ("SPVs") created and maintained by First Brands—from which Onset purchased automotive manufacturing furniture, fixtures, equipment, inventory, and other assets acquired by the Carnaby Debtors from a First Brands subsidiary and immediately leased those same assets back to the same First Brands subsidiary (the "Carnaby Transactions" and, together with the Trico Transactions, the "Onset Transactions").  (*Id.* ¶¶ 77, 95.)

14.     From 2018 to 2025, in connection with the Onset Transactions, Onset funded nearly $3 billion on account of inventory and equipment to the Debtors.  Of those amounts, more than $550 million was funded by Movants to Onset, which, in turn, provided the funds to the applicable Debtor or directly to third-party manufacturers.

15.     In summer 2025, in connection with the Debtors' attempt to refinance their term loan indebtedness, certain lenders requested that the Debtors prepare a quality of earnings report

---

[9]     Additional background regarding Onset and the history of its relationship with the Debtors is set forth in Onset's Answer and Counterclaim, Cross-Claim, and Third-Party Complaint (the "Onset Answer") and the Onset Motion [Docket Nos. 16 and 32, respectively].

and provide additional due diligence.  (*First Brands Grp., LLC, et al. v. Patrick James*, No. 25-03803 (CML) (Bankr. S.D. Tex.) (Jan. 19, 2026) [*hereinafter FBG v. James*] [Docket No. 141], ¶ 16 (the "<u>Patrick Amended Complaint</u>"), attached to the Onset Answer as Exhibit 2.)  As a result, the Debtors' "pipeline of future financing screeched to a halt" and the Debtors were "exposed as undercapitalized and unable to meet [their] most basic payment obligations[.]"  (*Id.* ¶ 16.)

16.     Subsequently, the Debtors filed for chapter 11 protection with this Court on September 24 and 28, 2025 (as applicable, the "<u>Petition Date</u>").  As of the Petition Date, Onset and its funding partners (including Movants) had contractual claims alone of at least $2.17 billion assertable against the Debtors.

17.     After the Petition Date, a special committee of the Debtors' board of directors commenced an investigation into the Debtors' prepetition conduct and management.[10]  According to the Debtors' special committee, that investigation revealed that Patrick and certain other insiders had conspired to cause "First Brands to fraudulently incur financing by: (a) using erroneous or fabricated invoices in connection with accounts receivable factoring activities; (b) executing off-balance sheet financing transactions through SPVs; (c) incurring liabilities through off-balance sheet SCF arrangements; and (d) altering First Brands' financial statements."  (*Id.* ¶ 44.)

18.     On November 3, 2025, Plaintiffs filed a complaint against Patrick and certain of his co-conspirators seeking, among other things, avoidance and recovery of billions of dollars in transfers as intentionally and constructively fraudulent.  That complaint was later amended to add certain additional insiders as co-defendants and assert claims for breach of fiduciary duty, aiding and abetting, and conspiracy.  (*See generally id.*)  In that complaint, the Debtors accuse Patrick

---

[10]   In connection with that investigation, Onset produced more than 5,500 documents, comprising 180,000 pages, to the Debtors, which Onset also produced to the Official Committee of Unsecured Creditors (which was conducting its own investigation).  Quite tellingly, *none* of these documents from Onset are cited in the Plaintiffs' Complaint.

and his co-defendants of perpetuating a massive fraud scheme that included stealing funds from investors, lenders, and customers to fund a lavish lifestyle of private chefs, exotic cars, and high-end real estate.  (*See id.* ¶¶ 86, 99–100.)

19.     On January 9, 2026, Plaintiffs initiated this Adversary Proceeding with the filing of the Complaint.  It details Ed's alleged abuse of his corporate office, role as fiduciary to certain of the Debtors, and close family relationship to enrich himself at the expense of the Debtors and their creditors.  Quite conspicuously, however, the Complaint *omits* the Debtors' prior allegations regarding Patrick and his co-conspirators in the Patrick Amended Complaint, presumably because Plaintiffs realize the conflicting theories advanced in their later-filed Complaint here do not hold up when considered side-by-side with the Patrick Amended Complaint.  Nonetheless, the Complaint seeks, contrary to the allegations in the Patrick Amended Complaint—which clearly alleges Onset to be one of the (if not the) largest victims of the fraud—to lay blame for the crimes of the James brothers and their cohorts at Onset's feet.

20.     Only Counts I-III and XIX are applicable to Movants.  Counts I and II of the Complaint seek recovery from Movants by avoiding certain transfers to Onset as intentionally or constructively fraudulent under the Bankruptcy Code, as well as Delaware and Ohio law.  (*Id.* ¶¶ 149–170.)  As for Count III, which is the only count in the Complaint seeking relief directly from Movants, Plaintiffs' purported basis for recovery from Movants is as subsequent transferees of Onset (*id.* ¶¶ 171–78) premised upon Count XIX, which seeks avoidance of certain transfers made to Onset in the year prior to the Petition Date as preferences under Bankruptcy Code section 547.  (*Id.* ¶¶ 283–96.)  None of the Complaint's other counts seek relief with respect to Movants, who appear to have been thrown in by Plaintiffs as another victim they can target for their own recoveries.  Movants reserve all rights with respect to the remaining counts of the Complaint.

## <u>LEGAL STANDARD</u>

21.     In reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to a plaintiff." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025). The question is not whether a plaintiff is "conceivably" entitled to relief, but whether the claims as pled are "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "Naked assertions devoid of further factual enhancement" that are "merely consistent with a defendant's liability" are not sufficient to survive a motion to dismiss. *In re Shipley Garcia Enters. LLC*, No. 11-20016, 2014 WL 1329252, at *5 (Bankr. S.D. Tex. Mar. 28, 2014) (quoting *Twombly*, 550 U.S. at 557).

22.     The court's review is limited generally to the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 205 (5th Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court may, however, consider additional materials beyond the pleadings without converting the motion into one for summary judgment if such materials are "integral to" the claims set forth in the complaint. *See Meyers v. Textron, Inc.*, 540 F. App'x 408, 409–10 (5th Cir. 2013) (collecting authorities). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim . . . can avoid dismissal" by "failing to attach the relied upon" such materials. *In re Roberts*, No. 25-01299, 2025 WL 3496228, at *8 (Bankr. D. Del. Dec. 4, 2025) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

**ARGUMENT**

23.     The Complaint fails to identify with any degree of particularity the transfers on which Plaintiffs seek to recover, with claw backs, untold millions of dollars from Movants, who were badly victimized by the fraud scheme orchestrated by the James brothers and their cohorts at First Brands.  Plaintiffs do not explain which Debtors made the transfers, nor do they allege in what amounts, to whom, and on which dates.  Such generality falls well short of long-established notice pleading requirements under Rule 8, and therefore mandates dismissal of the Complaint with respect to Movants.

24.     Plaintiffs' underlying fraudulent transfer and preference claims against Onset (without which there can be no recovery against Movants) fare no better.  Although certain of the claims sound in fraud, the Complaint fails to explain, as required by Rule 9(b), the who, what, when, where, or why of Onset's alleged scheme.  Plaintiffs also fail to allege basic facts showing that the relevant Debtors were insolvent at the time of the challenged transfers, that they received less than reasonably equivalent value on account of such transfers, or that the necessary elements of a preference have been met.

25.     Finally, as explained in greater detail in the Onset Motion, prior to the Petition Date, Plaintiffs executed broad releases of liability in favor of Onset and Movants, which bar the majority of Plaintiffs' claims in the Complaint.  Plaintiffs cannot recover against Movants on account of any claims that were subject to a valid release, and Movants incorporate by reference herein the Onset Motion's arguments with respect to these releases.

26.     Even accepting the Complaint's deficient allegations to be true, Plaintiffs have also failed to demonstrate that they are entitled to relief against Movants.  All Counts of the Complaint implicating Movants—*i.e.*, Counts I, II, III, and XIX—therefore should be dismissed.

I. **THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT MOVANTS ARE SUBSEQUENT TRANSFEREES AGAINST WHICH THE DEBTORS MAY RECOVER** *(COUNT III).*

27.     The only count of the Complaint seeking relief directly against Movants is Count III, which seeks to recover certain vaguely defined "Onset Transaction Transfers" from Movants as subsequent transferees.

28.     To adequately plead recovery under section 550(b) of the Bankruptcy Code, however, a plaintiff must, at a minimum, identify the transfer or transfers it seeks to avoid and provide sufficient context to put a defendant on notice as to the claims against it.  *See In re All Texas Elec. Contractors Inc. v. NSPS Metals LLC*, No. 20-34656, 2022 WL 162786, at *7 (Bankr. S.D. Tex. Jan. 18, 2022) (holding that avoidance complaint must specify date and amount of transfers and identities of transferors and transferees); *In re Quantum Foods, LLC*, 558 B.R. 111, 115 (Bankr. D. Del. 2016) (concluding creditors' committee had failed to adequately plead claim for avoidance and recovery of preference under section 550 where complaint did not identify "any contracts or agreements between the parties" or "provide any context or describe the nature of the transfers"); *Guiliano v. Haskett (In re MCG, L.P.)*, 545 B.R. 74, 82–83 (Bankr. D. Del. 2016) (finding avoidance and recovery inadequately pled where complaint does not allege any facts that give context or a description of the transfers from the debtors to the defendant beyond to whom the check was sent, the dates the check was sent and received, and the amount of the transfer).[11]

29.     Here, Plaintiffs do not plausibly allege facts supporting the relief they seek.  This is because they do not specify which transfers they seek to recover, or from which parties, nor do

---

[11]     In 2020, Judge Robert Jones of the Northern District of Texas canvassed the case law regarding the detail with which a plaintiff must identify transfers subject to avoidance to survive a motion to dismiss.  *See In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2020 WL 4939180, at *6 (Bankr. N.D. Tex. Aug. 24, 2020).  While there is no overwhelming consensus with respect to preference claims, "[m]ost courts effectively require the specific-pleading standard of *Valley Media*, without expressly adopting it."  *Id.*  "The *Valley Media* standard requires that a plaintiff plead each transfer by date, amount, transferor, and transferee."  *Id.* at *5 (citing *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003)).

they allege which Debtors made those transfers or on which dates or in which amounts.  (*See* Compl. ¶ 173 (vaguely alleging merely that "[b]etween 2022 and the Petition Date . . . Onset made millions of dollars of transfers to . . . the other Onset Investors").)  Factual allegations of this sort are a foundational requirement of a section 550(b) recovery claim and Plaintiffs' failure to make such allegations here is fatal.  Count III should be dismissed as to Movants on that basis alone.

30.    Plaintiffs also cannot prevail against Movants' defenses to recovery that are apparent on the face of the Complaint.  *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (dismissing fraudulent transfer claim under Rule 12(b)(6) where affirmative defense "appear[ed] on the face of the complaint" and "judicially noticed facts"); *cf. Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (noting, in the context of *res judicata*, that affirmative defenses may be considered at motion to dismiss stage where their applicability is "apparent from the complaint and judicially noticed facts").  Indeed, *none* of the Movants are alleged to have directly provided funding to or received proceeds from the Debtors' estates.  To the contrary, Movants *only* did so through Onset.  (*See, e.g.*, Compl. ¶ 144 (alleging that Nielsen Investments "invested" in loans "through Onset"); *id.* ¶ 178 (alleging Movants to have been "subsequent transferees").)  Movants are therefore immune from any recovery to the extent they gave value to Onset in good faith and without knowledge of the avoidability of the underlying transfers.  *See* 11 U.S.C. § 550(b)(1); *In re Great Gulfcan Energy Texas, Inc.*, 488 B.R. 898, 913 (Bankr. S.D. Tex. 2013) (citing same).

31.    But the Complaint fails to allege facts—or even suggest—that Movants acted in bad faith or had knowledge of the avoidability of the underlying transfers to Onset.  And that is because they cannot.  As alleged in the James Brothers Indictment, the James brothers "made false and misleading representations to the Off-Sheet Lenders"—*i.e.*, Onset and its Movant-funding

partners—to "fraudulently induce them to extend and expand financing," including submitting "falsified inventory schedules and account documentation" to create "the false appearance of legitimate collateral and transaction activity supporting the [Onset] loans." (*See* James Brothers Indictment, ¶ 25.) In other words, having been fraudulently induced by First Brands, Movants could not have acted in bad faith or had the requisite knowledge of avoidability.

32.     Plaintiffs attempt unsuccessfully to preemptively plead around Movants' section 550(b)(1) good-faith-transferee defense. Instead of offering, as they must, specific facts supporting their threadbare allegations of Movants' "bad faith" or that Movants had "knowledge" of the First Brands fraud scheme, Plaintiffs plead only in generalities and allusion. They suggest in conclusory and speculative fashion that Movants "participated in" the alleged fraud without offering any explanation as to how (Compl. ¶ 140); that Movants "were aware, or should have been aware" of Ed's participation in the Onset funding transactions without offering any basis for such knowledge (*id.* ¶ 141); and that Movants "acted in bad faith before and throughout the [alleged] scheme" absent any supporting factual allegations (*id.* ¶ 176). The Court should not give "legal conclusions couched as factual allegations" such as these "any weight." *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 717 (Bankr. S.D. Tex. 2020) (finding bare allegation that defendant "caused" debtor to make fraudulent transfers was insufficient without specifying how they did so).

33.     Equally as flawed is the Complaint's self-contradicted assertion that Movants received "distributions [from Onset] for no or inadequate value to Onset." (Compl. ¶ 177.) In the same Complaint, Plaintiffs characterize Movants as Onset's "investors." (*See, e.g., id.* at 1–2 (defining Movants as among the "Onset Investors"); *id.* ¶¶ 140–41 (alleging that Movants invested alongside Onset and Edward James and characterizing movants as Onset's "co-investors" and

"financial backers"); *id.* ¶ 144 (alleging Movant Nielsen Investments to be among the "known parties that 'invested' through Onset in loans" to the Debtors).)  Plaintiffs' allegations necessarily imply that Movants invested funds with Onset to finance the relevant transactions with the Debtors and that any distributions to the Movants from Onset were on account of those investments.  That Onset would provide gratuitous handouts to its partners without obtaining something in return is entirely implausible, *cf. Iqbal*, 556 U.S. at 680 (holding that allegations must not be merely "conceivable" but "plausible"), nor is any factual support offered for this hollow claim.

34.     In any event, recovery against Movants is premature unless and until Plaintiffs first successfully avoid the underlying transfers to Onset, which has not occurred here.  *See* 11 U.S.C. § 550(a) (permitting recovery only "*to the extent that* a transfer is avoided" (emphasis added)).  At a minimum, the Court should hold Count III in abeyance until such time that Plaintiffs are able to properly replead they can avoid any of the relevant transfers.  *See, e.g.*, *In re Caremerica, Inc.*, 409 B.R. 737, 759 (Bankr. E.D.N.C. 2009) (staying counts for recovery under section 550 against alleged subsequent transferees until underlying section 547 and 548 avoidance claims were adjudicated against initial transferees).

## II. PLAINTIFFS FAIL TO STATE CLAIMS FOR AVOIDANCE OF THE UNDERLYING TRANSFERS TO ONSET *(COUNTS I, II, XIX).*

35.     Setting aside Plaintiffs' defective pleading in Count III, their attempt to recover against Movants is also flawed because they fail to allege facts sufficient to establish that the underlying transfers can be avoided.[12]  The Complaint not only fails to meet the requirements of Federal Rules 8 and 9, but Plaintiffs also seek avoidance of transfers that occurred *prior* to the applicable "lookback" period under state and federal bankruptcy law.  Accordingly, Counts I, II, and XIX should be dismissed.

---

[12]     As explained in further detail in the Onset Motion (*see, e.g.*, ¶¶ 120–27).

**A.**     <u>**Plaintiffs Do Not Allege Fraud with the Specificity Rule 9(b) Requires.**</u>

36.     Because fraud is an essential element of the claim, courts in the Fifth Circuit apply Rule 9(b)'s heightened pleading standard to claims for actual fraudulent transfer.  *See, e.g.*, *In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 170–71 (S.D. Tex. 2016).  Similarly, Ohio and Delaware courts apply Rule 9's heightened pleading standard to actual fraudulent transfer claims.  *See Van-Am. Ins. Co. v. Schiappa*, 191 F.R.D. 537, 543 (S.D. Ohio 2000) (holding Rule 9(b) applies to actual fraudulent transfer claims); *In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (noting line of cases finding that Rule 9(b) applies to constructive fraud claims as well).

37.     To satisfy Rule 9(b), plaintiffs must plead the circumstances of the alleged fraud with particularity, including the "who, what, when, where, and how" of each allegedly fraudulent transfer.  *In re Neighbors Legacy Holdings, Inc.*, 645 B.R. 864, 878 (Bankr. S.D. Tex. 2022) (citing *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020) (quotation marks omitted)).  Conclusory allegations, formulaic recitations of statutory elements, and generalized assertions of fraudulent intent are insufficient.  *See In re Reagor-Dykes Motor*, 2020 WL 4939180, at *10 ("[W]ithout more than general allegations" about the transfers, "the complaint fails to meet the pleading standard of Rule 9(b)."); *State ex rel. Woodridge Loc. Schs. v. Facebook, Inc.*, 432 F. Supp. 3d 729, 734 (N.D. Ohio 2020) (finding plaintiff failed to allege any facts supporting the complaint's conclusory allegations).

38.     Here, much of the Complaint proceeds from the categorically false and presumptive premise that Onset and its funding partners conspired with First Brands insiders to defraud the Debtors.  Plaintiffs conjure up the notion that "Onset and Edward James made a deal" (Compl. ¶ 1) whereby they "agreed to secretly impose on the FBG Debtors billions of dollars" of fraudulent debt (*id.* ¶ 78).  Given the grave nature of this allegation, Plaintiffs would naturally be expected to plead specific facts backing up their claim of a corrupt deal.  Yet they offer none (because the deal

never existed).  Plaintiffs fail to allege even the most basic details regarding Onset's supposed "deal" with Ed to fraudulently straddle First Brands with crushing debt, let alone facts with the requisite particularity to plead fraud under Rule 9(b).  Such bare, factually unsupported allegations of fraud are insufficient to withstand this motion to dismiss.

39.     The hollow allegations levied against Onset, and by extension, Movants, stand in stark contrast to the Debtors' detailed allegations of fraud and other misconduct against the James brothers, both here and in their other filings, including the separate adversary proceeding filed against Patrick.  (*See, e.g.*, *id.* ¶ 93 (alleging that Ed "established an intentionally deceptive flow of funds" to conceal fraud from creditors); *id.* ¶¶ 97–98 (describing steps purportedly taken by Ed to prevent Onset and the Debtors' employees from speaking directly); Patrick Amended Complaint ¶¶ 75, 77 ("Based on evidence uncovered to date, the vast majority of the misappropriated funds— totaling approximately $708 million, with over $229 million in 2025 alone—were transferred to Defendant Patrick James Trust. . . . James personally directed these distributions from the Company to Defendant Patrick James Trust, specifying the amount and destination accounts for each payment.").)  Plainly, Plaintiffs understand the heightened pleading requirements necessary to support allegations of fraud against Patrick and Ed, yet in stark contrast, wholly disregard their burden as part of their desperate cash-grab from Onset and Movants here.

40.     Indeed, Plaintiffs merely hypothesize on "information and belief" that Onset "agreed to and knew about Edward James' . . . abuse of his position as a corporate officer" of the Debtors and that he would "manipulate" and "cause" the Debtors to enter into transactions that would "divert hundreds of millions of dollars" away from the Debtors.  (Compl. ¶ 84.)  While a complaint may allege fraud on information and belief, it must still "set forth a factual basis for such belief."  *See In re Neighbors Legacy Holdings*, 645 B.R. at 878.  Plaintiffs have entirely failed

to do so here.  They do not explain how Onset purportedly acquired knowledge about Ed's misconduct, the circumstances under which Onset acquiesced to his misconduct, or the factual basis for concluding that Onset did so.

41.    The crux of Debtors' fraud allegations levied at Onset are premised on speculative and inconsistent assertions that Onset, in essence, "must have known" there was fraud at First Brands, and at the same time, it also induced Ed to participate in a fraud scheme that it had concocted.  Setting aside the obvious facial incongruency in these allegations, the only facts that the Debtors allege purporting to show Onset's knowledge are that (i) Onset's transactions with First Brands were off-balance sheet via SPVs; (ii) these same transactions involved higher rates of returns than institutional loans; and (iii) after four years into Onset's dealings with First Brands, Ed began contributing his own funds to participate in Onset funding transactions while he was an officer of First Brands.[13]  Setting aside how the Debtors seek to characterize these undisputed facts to serve their own interests, the dearth of specific allegations, or even citation to a single communication showing Onset's knowledge of, or intent to engage in, fraud makes clear they are unable to meet their pleading burden.  This glaring gap is all the more notable considering the hundreds of thousands of pages of documents already produced by Onset in these proceedings and the Debtors' unfettered access to First Brands' communications and other materials.

42.    Plaintiffs similarly fail to identify any concrete steps taken by Onset in furtherance of the so-called conspiracy beyond cursory allegations of "collusion" and "conceal[ment]." (Compl. ¶ 85.)  Instead, the Complaint consists of little more than descriptions of commonly used

---

[13]    As addressed in more detail in Onset's counterclaims filed on February 19, 2026 [Docket No. 16], there is nothing inherently fraudulent or otherwise improper about these business dealings, which are entirely mischaracterized and described without relevant context by Debtors.  From Onset's perspective, and as supported by reams of evidence, these transactions were entirely legitimate and bona fide, conducted lawfully and in good faith.  Merely netting handsome profits from multiple transactions with First Brands, and whether Ed may have breached duties he owed to First Brands—which was wholly owned by his brother Patrick—does not in and of itself amount to evidence of fraud.

securitization structures involving SPVs. (*See, e.g.*, *id.* ¶ 74 (alleging a "scheme" involving "SPV financing structures whereby special purpose entities would be utilized as 'borrowers' . . . to perpetuate the scheme"); *id.* ¶ 85 (citing Onset's filing of UCC-1s against SPVs with which Onset transacted as supposed evidence of concealment); *id.* ¶¶ 91–93 (describing the establishment of the Carnaby Debtors as SPVs); *id.* ¶¶ 129–131 (describing byzantine funds-flow and allegedly high returns as evidence of "Onset's bad faith and knowledge" of the alleged fraud); *id.* ¶¶ 234–37 (describing use of special purpose Carnaby Debtors to raise financing secured by operating Debtors' inventory).) But the use of SPVs in this manner does not support a theory of fraud, as has been made clear by Debtors' own counsel. (*See, e.g.*, "Weil Structured Finance Talking Points – Inventory Securitization," WEIL GOTSHAL & MANGES LLP (Apr. 2024), https://www.weil.com/-/media/files/pdfs/2024/april/weil-structured-finance-talking-points.pdf (describing use of SPVs to obtain financing backed by inventory).)

43.     In addition to falling short of the required heightened pleading standard, the Complaint's fraud theory directed at Onset does not make sense even under its own internal logic. The timeline as alleged by Plaintiffs is as follows: the Debtors were collectively insolvent since at least the time of their first transaction with Onset in 2018 (Compl. ¶ 132); notwithstanding Onset's presumed awareness of the Debtors' insolvency, it nonetheless put billions of dollars of its and its funding partners' capital at risk by imposing "enormous, above-market financial obligations" on the Debtors that it knew "they could not possibly satisfy," while still somehow "reap[ing]" profits from entities that had no money to pay it (*id.* ¶¶ 128, 132); then, after four years of going it alone, in 2022 Onset supposedly recruited Ed—First Brands' EVP and Patrick's brother—and somehow "induced [him] to join and implement the scheme" to defraud the Debtors (*i.e.*, entities that Patrick owned and controlled), after which Onset willingly invested billions more into a Potemkin

17

business that it allegedly knew lacked economic substance and stability, much less adequate collateral or sufficient cash to fulfill their obligations and sustain Onset's financing transactions. (*Id.* ¶¶ 119, 148.)  It makes no sense that Onset would have concocted or even participated in such a scheme that would leave Onset utterly over a barrel fully exposed to the entire risk of loss.

44.      Indeed, Plaintiffs' Complaint fails to acknowledge the stark reality that, as a result of First Brands' collapse into bankruptcy, Onset and its funding partners are now left with billions of dollars in prepetition claims against the Debtors (*see supra* ¶ 16) and are at risk of losing their rights to billions more of inventory and other property securing their claims.  (*See, e.g.*, Compl., ¶¶ 233–69 (seeking to avoid, recharacterize, or otherwise challenge Onset's liens, claims, and lease rights).)  Nor does the Complaint acknowledge Debtors' prior and continuing allegations in this bankruptcy proceeding that it was the James brothers and their insider cohorts who collectively orchestrated and operated the Debtors' fraudulent scheme that caused their collapse into bankruptcy and the risk of significant loss now faced by Onset and Debtors' other creditors.  (*See generally* Patrick Amended Complaint.)  It strains credulity that the largest victim of a corporate fraud was also its ringleader (despite being an outsider), and that its participation in the fraud predated that of the principal co-conspirator who only participated because he was induced by that same victim (despite being a senior corporate insider and brother to a CEO who controlled countless LLCs through which millions of the victim's dollars were funneled).  As the James Brothers Indictment makes clear, Patrick and Ed, together with their insider cohorts, orchestrated this massive fraud scheme.

45.      Plaintiffs' allegations of fraud against Onset are, in a word, implausible, if not fantastical.  They are also unsupported by particularized and detailed allegations of the operative facts.  The "conclusory allegations" and "legal conclusions masquerading" as facts offered by

Plaintiffs "will not suffice" to survive a motion to dismiss.  *United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 762 (5th Cir. 2025) (cleaned up).  Because the Court is left to "make guesses to fill in the blanks regarding the fraud's operative facts," Plaintiffs have not met Rule 9(b)'s heightened pleading standard.  *Id*.  Counts I and II should therefore be dismissed.

### B.    Even Under Rule 8's Notice Pleading Standards, the Complaint Does Not Adequately Allege Fraudulent Transfer or Preference Claims.

46.    Rule 8 requires that a plaintiff plead facts supporting each statutory element of an avoidance claim; mere recitation of the elements or parroting of statutory language is not enough.  *See, e.g.*, *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 121–22 (5th Cir. 2019) (holding complaint did not state preference claim where plaintiff did not allege facts in support of each "essential element of a preferential transfer," including identifying specific transfers, matching transfers to antecedent debts, alleging diminution of the estate, and demonstrating transfer left creditor better off than in a chapter 7); *In re All Texas Elec. Contractors*, 2022 WL 162786, at *7–8 (finding complaint did not adequately plead constructive fraud claims and noting that a plaintiff "must do more than just summarily state there was less than a reasonably equivalent value in exchange" for the transfer (quotation omitted)); *State ex rel. Woodridge Loc. Schs.*, 432 F. Supp. 3d at 734 (same).

47.    An avoidance plaintiff must also plausibly allege insolvency, which requires "specific reference to the transferor's financial condition at the time of the transfer."  *Neighbors Legacy Holdings*, 645 B.R. at 895 (cleaned up) (citing *Tow v. Bulmahn (In re ATP Oil & Gas Corp.)*, 711 F. App'x 216, 223 (5th Cir. 2017)).  Generalized or group allegations where multiple debtors or transferors are involved do not suffice: a complaint must identify precisely which debtor was insolvent at the time of making the specific transfer that the plaintiff seeks to avoid.  *See id.*

(noting that "Rule 8 generally prohibits group pleading" and dismissing fraudulent transfer claims where complaint failed to "identify which specific transferors were insolvent at the time of the allegedly fraudulent transfers").

> **1.    The Complaint Does Not Allege Insolvency or Lack of Reasonably Equivalent Value on a Debtor-by-Debtor or Transfer-by-Transfer Basis.**

48.    Under state and federal law, to avoid any transfers to Onset as constructively fraudulent, Plaintiffs must allege that, among other things, the transferor Debtor transferred property to Onset (a) while insolvent and (b) for less than reasonably equivalent value.  *See Matter of Louisiana Pellets, Inc.*, 838 F. App'x 45, 49 (5th Cir. 2020) (analyzing federal bankruptcy law); *In re Youngstown Osteopathic Hosp. Ass'n*, 280 B.R. 400, 409 (Bankr. N.D. Ohio 2002) (analyzing Ohio law); *In re Plassein Int'l Corp.*, 405 B.R. 402, 411 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 64 (D. Del. 2010) (analyzing Delaware law).  Count II of the Complaint does neither and should be dismissed.

49.    *First*, the Complaint does not contain a single allegation that any particular Debtor was insolvent at the time it made, or was rendered insolvent by, any particular transfer.  Rather, Plaintiffs state that "the Company" (a term not defined in the Complaint) "had inadequate capital to conduct its business" and was "functionally insolvent at the time of" the transfers to Onset. (Compl. ¶¶ 133, 137.)  According to Plaintiffs, "the Company's" financial practices that "rendered [it] insolvent" had "predate[d] the Petition Date by years."  (*Id.* ¶ 136.)  Pursuant to Plaintiffs, this "demonstrated that the Company was insolvent at the time of—or rendered insolvent by—the Onset Transactions."  (*Id.*; *see id.* ¶ 167 (same).)

50.    But insolvency cannot be pled, as Plaintiffs do, on a group basis; Plaintiffs were required to plead that *each* individual Debtor-transferor was insolvent at the time of *each* applicable transfer.  *See, e.g.*, *In re Neighbors Legacy Holdings*, 645 B.R. at 895 ("A plaintiff

plausibly alleges insolvency with specific reference to the transferor's financial condition at the time of the transfer[.]") (cleaned up).  Plaintiffs are also required to "plead and provide factual context for each individual transfer [they] sought to avoid."  *In re All Texas Elec. Contractors*, 2022 WL 162786, at \*8.  Instead, the Complaint's allegations merely restate the statutory elements of a fraudulent transfer under the Bankruptcy Code, which is insufficient to carry Plaintiffs' burden under Rule 8.  *See id.* (holding that plaintiff "fail[ed] to carry its burden" of pleading insolvency where it "[s]imply repeat[ed] the elements" of section 548 and "pled generally" that the debtor "was insolvent on the date that [the] transfer was made or became insolvent as a result of such transfer"); *compare* 11 U.S.C. § 548(a)(1)(B) *with* Compl. ¶ 136.  If Plaintiffs' simple recitation of the elements were enough, there would be no pleading requirement at all.  That, of course, is not the case.

51.     Even if the Court were to construe Plaintiffs' legal recitations as factual allegations, the Complaint still fails to plead and "identify which specific transferors were insolvent at the time of the allegedly fraudulent transfers."  *In re Neighbors Legacy Holdings*, 645 B.R. at 895 (dismissing complaint for failure to adequately plead insolvency and noting that "Rule 8 generally prohibits group pleading").  The Complaint alleges that the Debtors as a whole were insolvent "since [the Onset Transfers] began" back in 2018.  (Compl. ¶ 132.)  That contention, like much alleged in the Complaint, is made solely "upon information and belief" (*id.*), and Plaintiffs provide no factual basis for their speculation.  If Plaintiffs' sweeping allegation is to be believed—*i.e.*, if the Debtors had in fact been insolvent for seven years prior to the Petition Date—that would strongly suggest that the fraud long predated Onset's involvement with First Brands.  It would also seriously undermine Plaintiffs' theory of the case: it is highly implausible that Onset would intentionally put $3 billion of capital at risk by knowingly buying into what Plaintiffs now allege

was an insolvent Ponzi scheme masquerading as a legitimate business.  *Cf. Iqbal*, 556 U.S. at 680

(2009) (requiring that claims be "plausible" to survive motion to dismiss).

52.  *Second*, Plaintiffs fail to allege facts demonstrating that the challenged transfers

were made for less than reasonably equivalent value.  Indeed, Plaintiffs do little "more than just

summarily state there was less than [] reasonably equivalent value in exchange" for the transfers

to Onset, which is plainly insufficient.  *In re All Texas Elec. Contractors*, 2022 WL 162786, at *7.

53.  Though the Complaint uses the phrase "reasonably equivalent value" over a dozen

times, only once do Plaintiffs explain why they believe such value was lacking: namely, that the

interest rates on Onset's loans were "higher" when "compared to the Debtors' cost of capital in

negotiated arms' length transactions."  (Compl. ¶ 126.)  But nowhere do Plaintiffs allege what the

interest rates *actually were* on the specific transfers they seek to avoid or what a "market" rate

*would have been* for the Debtors at the time of such transfers, save for a single passing reference

to the Debtors' existing ABL facility (*see id.* ¶ 119).  *See In re Chapman*, 628 B.R. 512, 535

(Bankr. S.D. Tex. 2021) (dismissing fraudulent transfer count where plaintiff "fail[ed] to compare

the value [d]ebtor received" from relinquishment of trust interest to "the income generated by" the

trust and "any value received" previously by the debtor).  Plaintiffs would compare unspecified

apples to entirely theoretical oranges and call it a day.  Rule 8 requires more than that.

54.  The Complaint's myopic focus on interest rates also obscures the substantial sums

that were invested by Onset and its funding partners (such as Movants) into the Debtors' business

and on account of which the challenged transfers were made.  (*See, e.g.*, Compl. ¶ 119 (alleging

Onset provided "about $1.7 billion" in financing to the Debtors over three years prior to

bankruptcy); *id.* ¶ 293 (alleging that Debtors made preferential transfers to Onset "on account of

22

antecedent debt owing to Onset")); *cf.* 11 U.S.C. § 548(d)(2) ("value" includes "satisfaction" of a debt).  The Complaint does nothing to address that value.

55.     It is Plaintiffs' "burden to break down each transfer and show that [the Debtors] did not receive reasonably equivalent value, and Plaintiff[s] failed to do so."  *In re All Texas Elec. Contractors*, 2022 WL 162786, at *7.  Accordingly, Count II should be dismissed.

### 2.     Plaintiffs Fail to Allege Necessary Elements of a Preference.

56.     The Complaint does not adequately state claims for avoidance of the transfers to Onset as preferences because it eschews factual allegations in favor of rote repetition of the elements of Bankruptcy Code section 547(b).  That is insufficient to survive a motion to dismiss. *See In re Arete Healthcare LLC*, No. 19-52578-CAG, 2022 WL 362924, *11 (Bankr. W.D. Tex Feb. 7, 2022) (noting that merely paraphrasing the elements of section 547 will not satisfy Fed. R. Civ. P. 8).

57.     To state a preference claim, Plaintiffs must plausibly allege that (a) a specific debtor transferred an interest in property, (b) to or for the benefit of a creditor, (c) on account of an antecedent debt, (d) while such debtor was insolvent, (e) during the 90 days (or, for creditors that are insiders, one year (*see infra* ¶ 68)) prior to the Petition Date, and (f) that such transfer allowed the creditor to receive more than it would have under a chapter 7 liquidation.  11 U.S.C. § 547(b). A failure to plead any of these elements warrants dismissal.  *Matter of Life Partners Holdings*, 926 F.3d at 122 (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (explaining that *Twombly* requires allegations on "each element of a claim")).  Plaintiffs fail to adequately plead at least four of these six foundational elements with respect to Count XIX of the Complaint.

### a.     Which Transfer by Which Debtor is Unclear

58.     The Complaint generally alleges that the "Debtors" collectively made "more than $46 million" of transfers to Onset within 90 days of the Petition Date and attaches a schedule

purporting to provide select information regarding nearly seven years' worth of transfers by over a dozen Debtor entities.  (Compl. ¶ 284, Ex. A.)

59.    It is unclear from the scattershot information pled by Plaintiffs which transfers made by which Debtors are alleged to be preferential.  *In re Reagor-Dykes Motors*, 2020 WL 4939180, at *8 (where there are multiple debtor entities, a preference plaintiff must identify specific transferor).  As with the fraudulent transfer counts, Plaintiffs merely allege that the "Debtors" writ large made certain transfers to Onset.  (Compl. ¶ 284.)  Plaintiffs' impermissible group pleading fails to "provide fair notice to the defendant" of the claims against it and this too is grounds for dismissal.  *In re Reagor-Dykes Motors*, 2020 WL 4939180, at *8.

### b.    Failure to Identify Antecedent Debts

60.    Plaintiffs similarly fail to identify the antecedent debts on account of which the allegedly preferential transfers were made, other than to allege generally that they were "on account of antecedent debt owing to Onset under the Leases."  (Compl. ¶ 293.)  Although courts grant some leeway in "complicated cases that concern hundreds or thousands" of transfers, at a minimum, a plaintiff must "match-up transfers with antecedent debt[s]."  *In re Reagor-Dykes Motors*, 2020 WL 4939180, at *8.  Plaintiffs fail to meet even this standard.

61.    Further, that the alleged preferences were made on account of antecedent debts is contradicted in the very next paragraph of the Complaint, where Plaintiffs allege that "the Debtors received no or insufficient value in exchange for the transfers made to Onset."  (Compl. ¶ 294.)  Plaintiffs cannot have it both ways: if the payments were made on an antecedent debt, then the Debtors by definition received value; if the Debtors did not receive value, then the payment could not have been on account of an antecedent debt.  *Cf.* 11 U.S.C. § 548(d)(2) (stating that under fraudulent transfer law, debtor receives "value" from "satisfaction" of an "antecedent debt").  In other words, the allegation in Paragraph 294 of the Complaint regarding an antecedent debt is

refuted by the allegation in Paragraph 293 regarding value and, therefore, Count XIX fails to satisfy a necessary statutory element and must be dismissed.

### c.    Failure to Allege Insolvency

62.    As explained above, Plaintiffs fail to plausibly allege that any particular Debtors were insolvent at any given time.  (*See supra* ¶¶ 48–51.)  This is fatal for transfers made between 90 days and a year prior to the Petition Date.[14]  Accordingly, as for any such transfers, the Complaint fails to state a claim.

### d.    Recovery Under Chapter 7 Is Not Alleged

63.    Rather than allege facts demonstrating that the alleged preferences allowed Onset to recover more than it would have in a liquidation under chapter 7, Plaintiffs merely recite the statutory text of Bankruptcy Code section 547(b)(5).  (Compl. ¶ 295.)

64.    That is not enough.  To survive a motion to dismiss, Plaintiffs must "explain what [Onset] would have received in a chapter 7 case" and "state whether [the transfers to Onset] were greater than that amount."  *Matter of Life Partners Holdings*, 926 F.3d at 122; *see In re Chapman*, 628 B.R. at 533 (complaint failed to allege all elements of preference where plaintiff "listed only the elements set forth under § 547(b)(5)" and did "not plead how the [agreement] diminished or depleted Debtor's estate").  Plaintiffs have not met their pleading burden as to this element.

65.    Because Plaintiffs fail to establish each statutory element of a preference under Bankruptcy Code section 547(b), Count XIX should be dismissed.

---

[14]    Although there is a presumption of insolvency during the 90 days prior to a bankruptcy filing, Plaintiffs retain the ultimate burden of proof on this issue.  *See, e.g.*, *Matter of Emerald Oil Co.*, 695 F.2d 833, 837–38 (5th Cir. 1983).

### 3.      Plaintiffs Fail to Plead Condition Precedent under Section 547(b).

66.    Separately, Plaintiffs do not allege that they have undertaken reasonable due diligence or considered Movants' (or, for that matter, any Defendant's) likely affirmative defenses to a preference claim prior to filing the Complaint.  *See* 11 U.S.C. § 547(b).  But Plaintiffs must do so as a condition precedent to commencing a preference action.  *See, e.g.*, *In re Trailhead Eng'g LLC*, No. 18-32414, 2020 WL 7501938, at *7 (Bankr. S.D. Tex. Dec. 21, 2020) (finding pleading requirement met where trustee had catalogued in detail steps it took to assess the claims and potential defenses before bringing preference claims); *In re Pinktoe Tarantula Ltd.*, No. 18-10344 (LSS), 2023 WL 2960894, at *5 (Bankr. D. Del. Apr. 14, 2023) (dismissing complaint and noting that pleading due diligence is a condition precedent to a preference claim, and not an affirmative defense to be raised by defendant); *see also* Fed. R. Civ. P. 9(c) (setting forth standard for pleading conditions precedent); *cf. In re Arete Healthcare*, 2022 WL 362924, at *11 (dismissing complaint on other grounds but noting that merely paraphrasing section 547(b)'s text would be inadequate to satisfy pleading requirement).  Plaintiffs' failure to allege satisfaction of that condition precedent warrants dismissal of each of the preference counts of the Complaint, including Count XIX.  *See In re Christmas Tree Shops, LLC*, No. 23-10575 (TMH), 2025 WL 3510820, at *2–3 (Bankr. D. Del. Dec. 5, 2025) (dismissing complaint for failure to plead due diligence).

### C.      **Plaintiffs Cannot Avoid and Recover Transfers Beyond the Applicable Lookback Periods.**

67.    Plaintiffs' claims must also be dismissed to the extent they seek avoidance of transfers that occurred prior to the applicable "lookback" periods under state and federal law. Bankruptcy Code section 548(a) permits avoidance of transfers that occurred within two years of the petition date.  11 U.S.C. § 548(a); *see In re Brown Med. Ctr., Inc.*, 552 B.R. at 170–71.  Ohio and Delaware state fraudulent transfer laws permit avoidance of transfers going back four years

from the petition date.  *See* 6 Del. Code § 1309(2) (four-year lookback period for constructive fraudulent transfers); Ohio Rev. Code Ann. § 1336.09 (same); *In re J & M Sales Inc.*, No. 18-11801 (JTD), 2021 WL 12360932, at *25 (Bankr. D. Del. Aug. 20, 2021) (applying Delaware law); *Admr., State Medicaid Est. Recovery Program v. Miracle*, 31 N.E.3d 658, 666 (Ohio Ct. App. 2015) (applying Ohio law).

68.     With respect to preferences, the estate may only seek to avoid transfers made in the 90 days prior to the petition date unless the transferee is an "insider," in which case there is an extended, one-year lookback period.  *See* 11 U.S.C. § 547(b)(4).  The party seeking avoidance bears the burden of proving a transferee's insider status.  *See In re With Purpose, Inc.*, No. 23-30246-MVL7, 2025 WL 1698694, *14 (Bankr. N.D. Tex. June 16, 2025) (holding that plaintiff has burden of proof to establish elements of preference).  Transfers that fall outside of the applicable lookback period are not recoverable.  *See, e.g.*, *In re J & M Sales Inc.*, 2021 WL 12360932, at *13 (dismissing claims as time-barred under Delaware's lookback provision)); *Miracle*, 31 N.E.3d at 666 (holding that a transfer that "occurred more than four years before the action was filed" was not recoverable under Ohio law).

69.     As the Court is aware, the Debtors filed for bankruptcy on September 24 (the "Initial Debtors") and September 28, 2025 (the "Subsequent Debtors").  Yet Counts I and II of the Complaint seek avoidance as fraudulent transfers broad categories of transfers dating back as far as 2018 (*see* Compl. ¶ 77, Exs. A & B)—well before the two- and four-year lookback periods under applicable state and federal law.[15]

---

[15]    To the extent the Court does not dismiss Counts I and II, Movants reserve all rights, including without limitation with respect to the law applicable to Plaintiffs' claims and whether the prerequisites for Bankruptcy Code section 544 have been met.

70.     To the extent Plaintiffs can meet section 544's prerequisites for the application of Delaware or Ohio law (*see* 11 U.S.C. § 544(b) (describing the circumstances under which state law remedies may be asserted on behalf of the estate)), then the absolute *earliest* transfers that Plaintiffs can seek to avoid are those that occurred on or after September 24, 2021 (or September 28, 2021, with respect to the Subsequent Debtors).   As such, Movants cannot be liable as subsequent transferees on account of any transfers (a) made by or on behalf of the Initial Debtors occurring prior to September 24, 2021, or (b) made by or on behalf of the Subsequent Debtors occurring prior to September 28, 2021.

71.     Count XIX seeks to avoid and recover as preferences transfers made to Onset up to a year prior to the Petition Date, alleging Onset to be an "insider" with respect to which the extended one-year lookback period applies.  *See* 11 U.S.C. § 547(b)(4).   But Onset is plainly not a statutory insider of the Debtors: it is not a director, officer, partner, affiliate, or otherwise in control of the Debtors.  *See* 11 U.S.C. §§ 101(31)(B), (E).   Nor do Plaintiffs allege any facts in support of a finding that Onset is a non-statutory insider.  *See, e.g.*, *Matter of Fabricators, Inc.*, 926 F.2d 1458, 1466 (5th Cir. 1991) (finding sufficient indicia of control to establish insider status where defendant "work[ed] long hours" at debtor's business, "represent[ed] himself to creditors and other third parties as the chief executive officer and controlling interest holder" of the debtor, and "negotiated the payment of [] debts and obtained new lines of credit" for the debtor); *Matter of Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 210 (5th Cir. 1983) (holding that a defendant may be a non-statutory insider where it exercises substantial influence or control over the debtor); *In re Essential Financial Educ.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021) (finding entity to be an insider where it made management decisions for the debtor; had access to the

debtor's premises, personnel, and financial data; and negotiated settlements on the debtor's behalf).

72.     The Complaint merely posits that "Onset's close partnership with Edward James qualifies [Onset] as an insider" and the allegedly "one-sided nature" of its transactions with the Debtors "exemplify Onset's insider status[.]"  (Compl. ¶¶ 290–91.)  These types of bare legal conclusions unsupported by factual allegations are not sufficient to survive a motion to dismiss. *Northstar Offshore*, 616 B.R. at 717.  Moreover, even if accepted as true, a close relationship alone, without more, is insufficient to establish a party as a non-statutory insider.  *See, e.g.*, *In re With Purpose*, 2025 WL 1698694, at *13 (finding that defendant was not an insider where it "did not have any managerial control[,]" "did not select new management for the Debtor[,]" or did not "control the Debtor's voting stock").

73.     Accordingly, Plaintiffs may only recover, if at all, on allegedly preferential transfers made to Onset in 90 days prior to bankruptcy filing (*i.e.*, those occurring before June 26, 2025, with respect to the Initial Debtors and those occurring before June 30, 2025, with respect to the Subsequent Debtors).

<u>**CONCLUSION**</u>

WHEREFORE, Movants respectfully request that the Court enter an order (or, to the extent applicable, enter a report and recommendation for a final order by the District Court) granting this Motion, dismissing the Complaint with respect to Movants, and granting such other and further relief as is just and proper.

*[Remainder of page left blank intentionally]*

Dated: March 6, 2026                          MUNSCH HARDT KOPF & HARR, PC
       Houston, Texas

By: /s/ *Deborah M. Perry*
    Deborah M. Perry
    Texas Bar No. 24002755
    500 N. Akard Street, Suite 4000
    Dallas, TX 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: dperry@munsch.com

    -and-

    MORRISON & FOERSTER LLP

    Carrie H. Cohen (admitted *pro hac vice*)
    James Newton (admitted *pro hac vice*)
    Ben Butterfield (admitted *pro hac vice*)
    Bryan Kotliar (admitted *pro hac vice*)
    250 West 55th Street
    New York, NY 10019
    Email: ccohen@mofo.com
    Email: jnewton@mofo.com
    Email: bbutterfield@mofo.com
    Email: bkotliar@mofo.com

    Anthony S. Fiotto (admitted *pro hac vice*)
    Julia C. Koch (admitted *pro hac vice*)
    200 Clarendon Street
    Boston, MA 02116
    Email: afiotto@mofo.com
    Email: jkoch@mofo.com

    Brian R. Michael (admitted *pro hac vice*)
    707 Wilshire Boulevard
    Los Angeles, CA 90017-3543
    Email: bmichael@mofo.com

    *Attorneys for Justin Nielsen and Nielsen
    Investments*

    -and-

By: /s/ *John D. Cornwell*
John D. Cornwell
Texas Bar No. 24050450
700 Milam Street, Suite 800
Houston, TX 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
Email: jcornwell@munsch.com

-and-

HOLLAND & HART LLP

Matt Ochs (*pro hac vice* forthcoming)
555 17th Street, Suite 3200
Denver, CO 80202
Email: mjochs@hollandhart.com

Eric G. Maxfield (*pro hac vice* forthcoming)
J. Derek Kearl (*pro hac vice* forthcoming)
Linsey M. Scoresby (*pro hac vice*
   forthcoming)
222 S. Main, Suite 2200
Salt Lake City, Utah 84101
Email: egmaxfield@hollandhart.com
Email: jdkearl@hollandhart.com
Email: lmscoresby@hollandhart.com

*Attorneys for Jonathan Gardner, Scott
Miller, Dale Holt, Todd Pedersen, Asilia
Credit Investments, LLC, Joshua Tree
Holdings, LLC, JA Gardner Holdings, Holt
Investments 201 LLC, Seddie LLC, Yuma
III, and Coral Dunes, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed on this 6th day of March 2026, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ <em>Deborah M. Perry</em>
Deborah M. Perry
